No. 50,511

STATE OF KANSAS, *Appellee,* v. RICK F. GREGG, *Appellant.*

(602 P.2d 85)

Opinion filed October 27, 1979.

*Charles M. Tuley,* of Atchison, argued the cause and was on the brief for the appellant.

*Samuel L. Schuetz,* county attorney, argued the cause, and *Robert T. Stephan,* attorney general, and *John L. Weingart,* assistant county attorney, were on the brief for the appellee.

The opinion of the court was delivered by

McFARLAND, J.: This is a direct appeal by Rick F. Gregg from his convictions by jury trial of aggravated sodomy (K.S.A. 21-3506) and aggravated indecent solicitation of a child (K.S.A. 21-3511), as a lesser included offense of the charged crime, indecent liberties with a child (K.S.A. 1978 Supp. 21-3503).

The charges herein arise from two separate incidents involving defendant and an eight-year-old girl, Michelle. The household in question included two women and their five children. Various male acquaintances of the women visited or resided in the home on varying bases. Defendant was one of these individuals, al-

though he was married and had a residence of his own. Defendant assisted in caring for the children.

The aggravated sodomy charge arose from the December 13, 1977, occurrence, and may be designated as the "bathroom incident." The victim stated that defendant forced her to commit fellatio with him. Defendant's version was that he was high on drugs and liquor and that the little girl had, on her own initiative, committed the act before he was aware of what was occurring.

The indecent liberties with a child charge (conviction of aggravated indecent solicitation of a child as a lesser included offense) arose from the occurrence on December 9, 1977, and may be designated as the "nosebleed incident." The victim had received a nosebleed from a facial blow inflicted by one of the other children. Defendant then took the child upstairs to a bedroom.

The victim's version of what occurred in the bedroom was that defendant shut the door, told her to pull down her pants, pulled down his pants, "got on top" of her, hurt her in the genital area, and told her not to tell anyone. Defendant denied that anything untoward had occurred in the bedroom.

Defendant claims error in the refusal of the trial court to instruct on lewd and lascivious behavior (K.S.A. 21-3508) and indecent solicitation of a child (K.S.A. 21-3510) as lesser included offenses on both counts.

A lesser offense is considered a lesser included offense under K.S.A. 21-3107(2)(*d*) when all elements necessary to prove the lesser offense are present to establish the elements of the greater offense. *State v. Arnold*, 223 Kan. 715, 576 P.2d 651 (1978).

The following chart shows the charges, the lesser included instructions given, and those denied:

Count I ("bathroom incident")

| | | |
|---|---|---|
| Charged: | Aggravated Sodomy | K.S.A. 21-3506 (B felony) |
| Lesser Included Given: | Enticement of a Child | K.S.A. 21-3509 (D felony) |
| | Aggravated Indecent Solicitation of a Child | K.S.A. 21-3509 (E felony) |
| Lesser Included Denied: | Lewd and Lascivious Behavior | K.S.A. 21-3508 (B misdemeanor) |
| | Indecent Solicitation of a Child | K.S.A. 21-3510 (A misdemeanor) |

Convicted: Aggravated Sodomy

Count II ("nosebleed incident")

| Charged: | Indecent Liberties with a Child | K.S.A. 1978 Supp. 21-3503 | (C felony) |
|---|---|---|---|
| Lesser Included Given: | Enticement of a Child | K.S.A. 21-3509 | (D felony) |
| | Aggravated Indecent Solicitation of a Child | K.S.A. 21-3511 | (E felony) |
| Lesser Included Denied: | Lewd and Lascivious Behavior | K.S.A. 21-3508 | (B misdemeanor) |
| | Indecent Solicitation of a Child | K.S.A. 21-3510 | (A misdemeanor) |

Convicted: Aggravated Indecent Solicitation of a Child

The elements of the offenses concerned herein are as follows:

## K.S.A. 1978 Supp. 21-3503. Indecent liberties with a child.

"(1) Indecent liberties with a child is engaging in either of the following acts with a child under the age of sixteen (16) years who is not the spouse of the offender:
"(a) The act of sexual intercourse;
"(b) Any lewd fondling or touching of the person of either the child or the offender, done or submitted to with the intent to arouse or to satisfy the sexual desires of either the child or the offender or both."

## K.S.A. 21-3508. Lewd and lascivious behavior.

"(1) Lewd and lascivious behavior is:
"(a) The commission of an act of sexual intercourse or sodomy with any person or animal with knowledge or reasonable anticipation that the participants are being viewed by others; or
"(b) The exposure of a sex organ in the presence of a person who is not the spouse of the offender·or who has not consented thereto, with intent to arouse or gratify the sexual desires of the offender or another."

## K.S.A. 21-3510. Indecent solicitation of a child.

"Indecent solicitation of a child is the accosting, enticing or soliciting of a child under the age of sixteen (16) years to commit or to submit to an unlawful sexual act."

## K.S.A. 21-3511. Aggravated indecent solicitation of a child.

"Aggravated indecent solicitation of a child is the accosting, enticing or soliciting of a child under the age of twelve (12) years to commit or to submit to an unlawful sexual act."

Indecent solicitation of a child makes certain acts with a child under sixteen years of age illegal. Aggravated indecent solicitation of a child makes the same acts with a child under twelve years of age illegal also, but with a greater penalty (class E felony as opposed to a class A misdemeanor).

Although defendant's position is not too clear on this point, apparently he is contending that indecent solicitation of a child is an automatic lesser included offense of aggravated indecent solicitation of a child since a child under twelve years of age must of necessity be a child under sixteen years of age. Defendant cites no authority in support of this contention.

Clearly, the legislature has seen fit to affix a greater penalty to certain acts committed with a young child than with an older child. There was no dispute as to the child's age. Under aggravated indecent solicitation of a child it was incumbent upon the State to prove the child was under twelve years of age. No error is shown in refusing to instruct on indecent solicitation of a child.

Defendant further complains that instructions on both counts should have been given on the lesser included offense of lewd and lascivious behavior (K.S.A. 21-3508). A reading of the statute shows the gist of the proscribed behavior is the exhibitionist aspect of the sexual behavior. This, accordingly, is not an offense necessarily proven on a prosecution of indecent liberties with a child or aggravated sodomy, nor is there an identity of elements. For illustration, both the latter offenses could transpire in total darkness; whereas, it would be virtually impossible to commit lewd and lascivious behavior under such circumstances.

This precise issue as to aggravated sodomy was decided in *State v. Crawford,* 223 Kan. 127, 573 P.2d 982 (1977), *cert. denied* 435 U.S. 930 (1978), wherein this court said at 128:

"Lewd and lascivious behavior, K.S.A. 21-3508(1)(*b*), is neither a lesser degree of aggravated sodomy, K.S.A. 21-3506, nor is it a crime necessarily proved if aggravated sodomy is proved. The elements of the former are separate and distinct. The state made no attempt to prove, nor did the evidence establish, that the defendant was merely a 'flasher.' . . . The trial court properly refused the requested instructions."

*Crawford* is equally good authority for the proposition that lewd

and lascivious behavior is not a lesser offense of indecent liberties with a child.

No error is shown by the trial court on either count in refusing to instruct on indecent solicitation of a child or lewd and lascivious behavior.

Defendant's next point of claimed error is the trial court's denial of defendant's motion for a psychiatric examination of Michelle, the complaining witness.

The day before the trial commenced, court and counsel had a pretrial conference. At that time defense counsel stated:

"Your Honor, my last pretrial motion I feel is the most important one and it's a motion for psychiatric examination of the alleged victim Michelle . . . .

"From examination of the preliminary hearing transcript it is my opinion, and it is fairly clear, that Michelle . . . is going to be a most important witness, maybe the only witness that the state puts on concerning the alleged sexual abuse to her.

"I really believe I am hard put to understand the power a 8 or 9 year old girl has over Mr. Gregg in his trial, since she is the only complaining witness. There appears to be no other corroborating testimony of anyone that could of seen the alleged incident, and because of this power that one individual would have over a defendant, it scares me, specifically if she does not tell the Court or does not understand what the truth is.

"If she has any psychiatric problems I think the Court and Counsel should be aware of them ahead of time and before trial."

Later, but prior to the testimony of Michelle, the trial court and the prosecutor questioned her as to her knowledge of the truth.

The matter of ordering a psychiatric examination of the complaining witness in a sex crime case is an issue of first impression in Kansas. The court may order a psychiatric examination of a defendant in a criminal case for the limited purposes set forth in K.S.A. 1978 Supp. 22-3302, 22-3219, and 21-4604. A psychiatric examination of a party in a civil action may be ordered pursuant to K.S.A. 60-235 when the party's mental condition is in issue.

Numerous other jurisdictions have determined the question of the right of an accused in a sex crime case to have a psychiatric examination of the complaining witness. The jurisdictions which have determined the issue fall into three general categories. No attempt will be made for an exhaustive analysis of each jurisdiction, but illustrative of the categories are the following:

1. The Court Has no Inherent Power to Compel Psychiatric Examination.

The District of Columbia, Oregon, Illinois, and New York are

jurisdictions commonly cited as belonging in this category. See Annot., Sex Crimes-Psychiatric Examination, 18 A.L.R.3d 1433, § 3. However, even these jurisdictions have suffered erosion. An example is *State v. Walgraeve,* 243 Or. 328, 412 P.2d 23, *rehearing denied* 243 Or. 331, 413 P.2d 609 (1966), wherein the court found that a discretionary power to direct a psychiatric examination of a complaining witness would invade the jury's province as to determining the credibility of a witness. The Oregon court reasoned any such fundamental change should come from the legislature. The Oregon courts continue to apply *Walgraeve,* but now make it clear that the intent of *Walgraeve* was to refuse a mandatory rule, not deprive a court of discretion to order such an examination. *State v. Clasey,* 252 Or. 22, 446 P.2d 116 (1968); *State v. Forsyth,* 20 Or. App. 624, 533 P.2d 176 (1975).

This category has always been a minority view and it appears to be declining even further.

2. The Defendant Has an Absolute Right to an Order Compelling a Psychiatric Examination of the Complaining Witness.

Indiana, in *Burton v. State,* 232 Ind. 246, 111 N.E.2d 892 (1953), required that the uncorroborated testimony of a complaining witness in a sex case be supported by psychiatric evidence supporting her credibility. *Burton* was overruled in *Wedmore v. State,* 237 Ind. 212, 223, 143 N.E.2d 649, 654 (1957), wherein the Indiana Supreme Court stated that it did not have the power or authority to require the state to support the testimony of a prosecuting witness in a sex case by requiring her to submit to a psychiatric examination, the report of which was to be used in evidence to support the conviction. However, no request had been made at trial in *Wedmore* for a psychiatric examination.

Defendant herein notes the dicta of the court in *Wedmore,* 237 Ind. at 223:

"In this case if timely objection to the competency of the prosecuting witness had been made, it would have been the duty of the court to make such an examination as would satisfy it as to her competency or incompetency."

The above statement could be interpreted as referring to a direct inquiry of the witness under oath by the court. Regardless of the meaning attached to the statement in *Wedmore,* however, it is clear from subsequent cases that Indiana is a discretionary state. See, *e.g., McNeely v. State,* ___ Ind. App. ___, 349 N.E.2d 204, 206 (1976):

"We do not hold that a psychiatric examination of a witness must be automatically granted upon request. The decision to grant a psychiatric examination rests within the sound discretion of the trial court."

3. The Trial Judge Has the Discretion to Order a Psychiatric Examination of the Complaining Witness Where a Compelling Reason is Shown.

This is the rule in the vast majority of jurisdictions which have considered the issue. The most widely cited case in support of this position is *Ballard v. Superior Court,* 64 Cal. 2d 159, 49 Cal. Rptr. 302, 410 P.2d 838 (1966). In *Ballard,* a physician charged with the rape of a patient sought, *inter alia,* to restrain the proceedings of the trial court pending relief. He contended the trial court should not have denied his request for an order requiring the complaining witness to undergo psychiatric examination for the purpose of determining whether her mental and emotional condition affected her veracity. The California Supreme Court extensively reviewed the various authorities and rejected "the polar extremes of an absolute prohibition and an absolute requirement that the prosecutrix submit to a psychiatric examination"; it accepted the "middle ground," placing the matter within the discretion of the trial judge. 64 Cal. 2d at 177.

Portions of the court's reasoning in *Ballard* are set forth as follows:

"Petitioner contends that the trial court should not have denied his request for an order requiring the complaining witness to undergo a psychiatric examination for the purpose of determining whether her mental or emotional condition affected her veracity. The resolution of this issue raises the dual problems of the judicial treatment of psychiatric testimony for the limited purpose of impeachment of the complaining witness in a sex violation case as well as the propriety of a psychiatric examination of such a witness.

"A number of leading authorities have suggested that in a case in which a defendant faces a charge of a sex violation, the complaining witness, if her testimony is uncorroborated, should be required to submit to a psychiatric examination. (3 Wigmore, Evidence (1940) § 924a, and authorities collected therein; [other citations omitted].) In California conviction of a sex crime may be sustained upon the uncorroborated testimony of the prosecutrix. [Citations omitted.]

"In urging psychiatric interviews for complaining witnesses in sex cases, some prominent psychiatrists have explained that a woman or a girl may falsely accuse a person of a sex crime as a result of a mental condition that transforms into fantasy a wishful biological urge. Such a charge may likewise flow from an aggressive tendency directed to the person accused or from a childish desire for notoriety. [Citations omitted.]  .  .  .  Professor Wigmore, in a widely quoted passage,

stated, 'No judge should ever let a sex-offense charge go to the jury unless the female complainant's social history and mental makeup have been examined and testified to by a qualified physician.' (3 Wigmore, Evidence, *supra,* 460; italics omitted.)

"This concern is stimulated by the possibility that a believable complaining witness, who suffers from an emotional condition inducing her belief that she has been subjected to a sexual offense, may charge some male with that offense. Thus, the testimony of a sympathy-arousing child may lead to the conviction of an unattractive defendant, subjecting him to a lengthy prison term.

. . . .

"The proposition that a prosecution witness may be impeached only in the manner and for purposes provided in the code [citation omitted] does not enjoy rigid application in sex violation cases. In that area the courts have established more liberal rules of impeachment than those otherwise applicable. Thus Justice Peters, cognizant of the danger of psychotically induced charges, held in *People v. Hurlburt* (1958) 166 Cal. App. 2d 334 [333 P.2d 82, 75 A.L.R.2d 500], that the trial court erred in a restrictive ruling on impeachment. He points out that although the general rule  .  .  .  forbids proof of specific acts of wrongdoing for purposes of impeachment, nevertheless in a prosecution for lewd conduct with a 9-year-old girl, defendant should have been permitted to cross-examine the girl, or to introduce evidence, to show that she had made similar, but false, charges against other men. [Citations omitted.]

"Following this trend the District Court of Appeal in *People v. Neely* (1964) 228 Cal. App. 2d 16 [39 Cal. Rptr. 251], recently held that the defendant could properly adduce medical testimony of the mental and emotional instability of the prosecutrix in a rape case. In that case 'Delores, the prosecuting witness, was a patient at Napa State Hospital' (p. 17); the sought testimony was that of a medical doctor at the hospital. The court said 'While the jury had been told that Delores' general reputation for truth, honesty and integrity was bad, the appellant was also entitled to have the jury informed of the mental and emotional instability of the prosecuting witness through the expert medical testimony of the doctor in charge of her case. The jury was entitled to hear such testimony and to have it before them as an aid in evaluating her testimony.' (P. 20.) The principle of the decision would obviously extend to a case in which the prosecutrix was not a patient and the expert not a doctor at her hospital.

"We do not mean to suggest that psychiatric testimony of the mental and emotional condition of the prosecutrix must necessarily be admitted in every case. We recognize that psychiatric evaluation is not absolute but only relatively illuminating; its utility in the ascertainment of the prosecutrix' condition must depend upon its posture in the whole picture presented to the trial court. That court can properly determine in its discretion whether psychiatric testimony as to the mental and emotional condition of the complaining witness should be admitted. We would read the *Neely* case as one in which the compelling reasons for the introduction of the testimony demonstrated the court's abuse of its discretion in rejecting it.

"We turn now to the matter of an examination of the prosecutrix by the psychiatrist. Even though a psychiatrist may *testify* about the credibility of a witness in the described type of case, 'most psychiatrists would say that a

satisfactory opinion can only be formed after the witness has been subjected to a clinical examination.' [Citations omitted.] Thus, authorities have suggested, as does petitioner, that the prosecutrix in a sex case should always be compelled to submit to a psychiatric examination. (See, e.g., 3 Wigmore, Evidence, *supra,* § 924a.) We submit however, that a general rule requiring a psychiatric examination of complaining witnesses in every sex case or, as an alternative, in any such case that rests upon the uncorroborated testimony of the complaining witness would, in many instances, not be necessary or appropriate. Moreover, victims of sex crimes might be deterred by such an absolute requirement from disclosing such offenses.

"Rather than formulate a fixed rule in this matter we believe that discretion should repose in the trial judge to order a psychiatric examination of the complaining witness in a case involving a sex violation if the defendant presents a compelling reason for such an examination. The Supreme Court of South Dakota recently stated, 'In an article entitled Psychiatric Opinions as to Credibility of Witnesses: A Suggested Approach, in Vol. 48, Cal. L. Rev. 648, at page 663, this conclusion is reached: "Most of the courts which have dealt with this problem have recognized the authority of the trial judge to order a psychiatric examination of a witness on the question of credibility. The principle established by the majority of the cases is that the judge has the *discretion* to order such an examination, although the failure to do so has rarely been held an abuse of discretion." We are not aware of any good reason why that should not be the rule concerning complaining witnesses in sex offenses.' (*State v. Klueber, supra,* 81 S.D. 223, 229 [132 N.W.2d 847, 850]; [other citations omitted].)

"We therefore believe that the trial judge should be authorized to order the prosecutrix to submit to a psychiatric examination if the circumstances indicate a necessity for an examination. Such necessity would generally arise only if little or no corroboration supported the charge and if the defense raised the issue of the effect of the complaining witness' mental or emotional condition upon her veracity. Thus, in rejecting the polar extremes of an absolute prohibition and an absolute requirement that the prosecutrix submit to a psychiatric examination, we have accepted a middle ground, placing the matter in the discretion of the trial judge." 64 Cal. 2d at 171-177.

See also Annot., 18 A.L.R.3d 1433.

We, too, adopt the "middle ground" and hold a trial judge has the discretion to order a psychiatric examination of the complaining witness in a sex crime case if the defendant presents a compelling reason for such examination. Even if a trial court finds a compelling reason for ordering the psychiatric examination, the further safeguard as to its admissibility remains. This result is in harmony with the "Rape Shield Statute", K.S.A. 60-447a.

In the case before us the judge did not deny the motion for lack of authority to grant it. Instead, in his discretion, he overruled the motion. The question then becomes whether the trial court abused its discretion in the denial of the motion.

The motion for the examination, made the day before trial, rested on such factors as the child's age, the seriousness of the crime, and the lack of corroborating evidence (in fact, her testimony was not wholly uncorroborated). No facts were stated or evidence introduced as to the child's mental instability, lack of veracity, similar charges against other men proven to be false, or any other reason why this particular child should be required to submit to such an examination. The motion was clearly a fishing expedition embarked upon in the hope something damaging and admissible in the trial would be unearthed. The trial court and prosecutor subsequently questioned the child about her understanding of telling the truth and nothing unusual surfaced. Defense counsel was offered the opportunity to question the child, but declined. At trial the cross-examination of the child was brief.

In short, no compelling reason for ordering a psychiatric examination of the child was shown or even alluded to. No abuse of discretion by the trial court is shown in denying defendant's motion for psychiatric examination of the complaining witness.

Defendant's final point is that, based on the issues previously raised herein, the trial court erred in denying defendant's motion for a new trial. The points urged in support of the motion for new trial have been determined adversely to defendant, which disposes of this point.

The judgment is affirmed.

FROMME, J., not participating.