NOT DESIGNATED FOR PUBLICATION

No. 117,433

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ERNESTO MEDINA,
*Appellant*.

MEMORANDUM OPINION

Appeal from Ford District Court; E. LEIGH HOOD, judge. Opinion filed July 20, 2018. Affirmed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Jodi Litfin*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before GARDNER, P.J., PIERRON, J., and WALKER, S.J.

PER CURIAM: Ernesto Medina appeals his conviction of aggravated indecent liberties with a child. Medina claims that the district court: (1) abused its discretion in denying his motion to compel a psychological examination of the victim, (2) erred by denying his motion to suppress a video recording of Medina's interview with police, and (3) abused its discretion by denying his motion for a departure sentence. Because we find no error committed by the district court, we affirm Medina's conviction and sentence.

1

Medina and his wife, P.M., lived in Dodge City with two children, L.M. and D.M. Medina is not L.M.'s biological father, but L.M. routinely referred to Medina as either her father or stepfather. In the fall of 2014, L.M.'s friend told a school counselor that Medina was sexually abusing L.M. The counselor contacted L.M.'s middle school counselor, Donna Dick, and suggested that she speak with L.M. When Dick asked L.M. about the abuse, L.M. admitted that Medina had touched her on her private parts. L.M. told Dick that her mother knew about the abuse and told Medina to stop, but the abuse continued.

Dick reported the abuse to the Kansas Department for Children and Families (DCF). Terri Trent, a DCF social worker, interviewed L.M. at her school and L.M. confirmed her statement to Dick that Medina had touched her. Trent took L.M. to the law enforcement center for a forensic interview. During the interview, L.M. reported that Medina had abused her on several occasions by using his hands to touch her breasts and private parts. She reported that, on one occasion, when she was lying in her mother's bedroom, Medina held her hands down, pulled up her shirt and bra, and used his mouth to touch her breast.

While L.M. was being interviewed at the police station, P.M. and Medina arrived. Detective David Gordon asked Medina to talk, and Medina agreed. Police recorded the questioning. Medina, a native Spanish speaker, reported that he understood English, but he had trouble speaking it, so Officer Andres Guerrero interpreted. During the interview, Medina admitted that there was one time when he woke up and realized that he was sucking on L.M.'s breast. Medina insisted that he thought it was his wife.

L.M. was removed from the home, and Medina was charged with one count of aggravated indecent liberties with a child. Before trial, Medina filed a motion seeking to have the court compel L.M. to submit to a psychological examination. The court

conducted a nonevidentiary hearing on Medina's motion, which it ultimately denied. Medina also filed a pretrial motion to suppress the video recording of his interview with police, arguing that his confession had been coerced due to interpretation errors. The district court held an evidentiary hearing on Medina's suppression motion, which it also denied.

At trial, the State admitted the video recording of Medina's interview with police. The jury found Medina guilty of aggravated indecent liberties with a child. Before sentencing, Medina filed a motion for a departure sentence, but the court denied the motion and sentenced Medina to life in prison without the possibility of parole for 25 years (otherwise known as Jessica's Law). Medina has timely appealed from his conviction and sentence.

ANALYSIS

*The motion to compel a psychological examination of L.M.*

Medina first argues that the district court erred by denying his pretrial motion for a psychological examination of L.M.

We review a district court's denial of a defendant's motion to compel a psychological examination of a complaining witness in a sex crime case for an abuse of discretion. *State v. Rojas-Marceleno*, 295 Kan. 525, 530, 285 P.3d 361 (2012). Unless the district court has made a legal or factual error, we may find an abuse of discretion only when no reasonable person would agree with the decision made by the district court. *State v. Ward*, 292 Kan. 541, 550, 256 P.3d 801 (2011). The party asserting error has the burden to show the district court abused its discretion. *Rojas-Marceleno*, 295 Kan. at 531.

A district court may order a psychological evaluation of a sex abuse victim—often referred to as the "complaining witness"—when the defendant can show that the totality of the circumstances demonstrate compelling reasons for the evaluation. *State v. Berriozabal*, 291 Kan. 568, 580-81, 243 P.3d 352 (2010); *State v. Gregg*, 226 Kan. 481, 489, 602 P.2d 85 (1979). A determination of whether such compelling circumstances exist requires examination of the totality of the circumstances, with the following nonexclusive list of factors to be considered—the *Gregg* factors: (1) whether there was corroborating evidence of the victim's version of the facts, (2) whether the victim demonstrates mental instability, (3) whether the victim demonstrates a lack of veracity, (4) whether similar charges by the victim against others are proven to be false, (5) whether the defendant's motion for a psychological evaluation of the victim appears to be a fishing expedition, and (6) whether the victim provides an unusual response when questioned about his or her understanding of what it means to tell the truth. *Berriozabal*, 291 Kan. at 581 (citing *Gregg*, 226 Kan. at 490).

In support of his motion to compel a psychological examination of L.M., Medina claimed:

- There was no corroborating physical evidence of L.M.'s accusations, and Medina's confession (the only corroborating evidence in the case) was "problematic" due to translation errors during police questioning;
- L.M. had demonstrated a lack of veracity by changing her story between interviews and by testifying at her half sister's child in need of care case that she had lied about the molestation; and
- L.M.'s unstable home life may have impacted her mental stability.

In response, the State argued:

- L.M's mother pressured her to take back her allegations;

4

- L.M. explained that she tried to recant her allegations during her sister's proceedings because her uncle urged her to "do her best," and said that if she could not, he would try to get Medina out of jail;

- L.M. stated that one allegation of rape was an exaggeration but remained firm that Medina had fondled her breasts; and

- L.M. was in counseling due to the abuse, but had no psychiatric history. While L.M. stated at one point that she wished she were dead, she had made no self-harm attempts. The State urged that L.M.'s distress was understandable considering she had been in foster care for 11 months.

The court conducted a nonevidentiary hearing on Medina's motion. At the hearing, Medina agreed that he had no reason to believe that L.M. was mentally unstable and that there was no evidence that L.M. had made false allegations in the past. But Medina urged that L.M.'s lack of veracity warranted a psychological evaluation.

Applying the *Gregg* factors, the court found that Medina had not demonstrated compelling reasons for a psychological evaluation. The court noted that the lack of corroborating physical evidence was not unusual for a child sex case. The court also found that L.M.'s attempt to recant her accusations was not unusual given her age and education level and that her statements did not show a lack of veracity, mental instability, or a misunderstanding of what it meant to tell the truth.

Our Supreme Court has upheld the denial of psychological examinations under similar circumstances. See, e.g., *Berriozabal*, 291 Kan. at 582 (finding evidence of unstable home environment insufficient to support allegation of mental instability and one possible incident of lying insufficient to support lack of veracity); *State v. McIntosh*, 274 Kan. 939, 944-46, 58 P.3d 716 (2002) (finding no abuse of discretion in denying defendant's motion for psychological exam where victim had behavioral problems, delayed reporting abuse, told inconsistent accounts of abuse, and medical evidence was

5

inconsistent with allegations); cf. *State v. Bourassa*, 28 Kan. App. 2d 161, 166-67, 15 P.3d 835 (1999) (finding district court abused its discretion by denying defendant's motion for psychological exam where victim was under psychological care, took psychiatric medication, tended to soil herself, and mutilated two kittens). In fact, a district court rarely abuses its discretion by refusing to order a psychological evaluation. *Rojas-Marceleno*, 295 Kan. at 531; see also *State v. Eddy*, 299 Kan. 29, 34, 321 P.3d 12 (2014) ("Appellate courts are typically loathe to find an abuse of discretion when a district court refuses to order a psychological examination of a young sex[ual] abuse victim, unless the circumstances are extraordinary.").

Here, we cannot find the district court abused its discretion by denying Medina's motion to compel a psychological examination of L.M. Although there was no corroborating physical evidence, Medina corroborated L.M.'s claim when he confessed in a police interview to sucking on L.M.'s breast. And although L.M. attempted to recant her allegations at her half sister's child in need of care case, L.M. had been placed in foster care and was under pressure from her family to help get Medina out of jail. L.M. was clearly under distress—so much so that she expressed a wish to die. But a reasonable person could conclude that L.M. was a traumatized victim rather than a mentally ill child incapable of telling or understanding the truth, and a reasonable person could agree with the district court's conclusion that Medina failed to establish compelling reasons for a psychological evaluation. Under these circumstances, Medina has not shown the district court abused its discretion by denying his motion.

*The motion to suppress*

For his second argument on appeal, Medina contends that the district court erred by denying his motion to suppress the video of his police questioning from evidence. Medina argues that his statements, including a confession, were coerced because they were obtained without the use of an effective interpreter.

6

In response, the State argues that Medina failed to properly preserve this issue for appellate review because Medina did not object to the admission of the video tape at trial. When a district court denies a pretrial motion to suppress, K.S.A. 60-404 requires that the moving party timely and specifically renew its objection when the opposing party moves to admit the evidence during trial. Failure to do so results in a failure to preserve the issue for appeal. K.S.A. 60-404; *State v. Sean*, 306 Kan. 963, 971, 399 P.3d 168 (2017). This is known as "the contemporaneous-objection rule." 306 Kan. at 971.

Here, in the pretrial motion, defense counsel argued that the district court should suppress the video tape of the police interview from trial. After an evidentiary hearing, the court denied the motion, finding that Medina's statements during the interview were freely and voluntarily given.

At trial, the State introduced the video recording of the police interview. The court asked defense counsel, "Do you have any objection to its admission?" Defense counsel replied, "No." The video was admitted into evidence and played for the jury. Around 40 minutes later, after the State rested its case, defense counsel renewed its objection to admission of the video. The court explained that the video had already been admitted into evidence, and defense counsel responded, "Okay. That was my mistake. I thought it was just to publish, not to admit."

Medina concedes that he did not object when the State admitted the video into evidence. But he argues that, because the district court would have admitted the evidence anyway, requiring a timely objection is a "mere formality." However, our Supreme Court has made clear that the contemporaneous-objection rule is not a mere formality, but a clear statutory mandate. Our courts have routinely refused to consider issues not properly preserved for appeal due to failure to comply with the contemporaneous-objection rule even when the defendant urged that review was necessary to serve the ends of justice and to prevent denial of fundamental rights. *Sean*, 306 Kan. at 973.

Here, Medina did not object until 40 minutes after the video was admitted into evidence and played for the jury. Medina did not timely object and, thus, failed to preserve the issue for appeal. See *State v. Dupree*, 304 Kan. 43, 63, 371 P.3d 862 (2016) (finding defendant's objection after statements introduced into evidence untimely, thus issue not preserved for appeal). Under the circumstances, we will not consider this issue further.

*Denial of Medina's motion for a downward departure*

Finally, Medina argues that the district court abused its discretion by denying his motion for a departure sentence.

We review a district court's determination that there were not substantial and compelling reasons to depart from a Jessica's Law sentence for an abuse of discretion. *State v. Randolph*, 297 Kan. 320, 336, 301 P.3d 300 (2013). Unless the court has made a legal or factual error, this court may find an abuse of discretion only when no reasonable person would agree with the decision made by the district court. *State v. Ward*, 292 Kan. 541, 550, 256 P.3d 801 (2011).

Under Jessica's Law, a sentencing court must sentence a defendant who is 18 years or older and convicted of aggravated indecent liberties with a child to life in prison with no possibility of parole for 25 years. K.S.A. 2017 Supp. 21-6627(a)(1)(C). The court has the discretion to impose a shorter sentence only if it "finds substantial and compelling reasons, following a review of mitigating circumstances." K.S.A. 2017 Supp. 21-6627(d)(1).

A nonexclusive list of mitigating factors a court might consider when deciding whether substantial and compelling factors exist to justify a departure sentence is contained in K.S.A. 2017 Supp. 21-6627(d)(2): (A) the defendant's lack of criminal

8

history; (B) the crime was committed while the defendant was under the influence of extreme mental or emotional disturbances; (C) the victim was an accomplice in the crime committed by another person, and the defendant's participation was relatively minor; (D) the defendant acted under extreme distress or under the substantial domination of another person; (E) the capacity of the defendant to appreciate the criminality of the defendant's conduct or to conform the defendant's conduct to the requirements of law was substantially impaired; and (F) the age of the defendant.

In his motion for a downward departure, Medina cited two mitigating factors—strong family support and no prior felony convictions. At sentencing, the district court considered Medina's motion and stated that, although he had a supportive family and no criminal history, the court did not find there were substantial and compelling reasons to grant the departure. The court denied the departure motion and, in accordance with Jessica's Law—K.S.A. 2017 Supp. 21-6627—sentenced Medina to imprisonment for life with a mandatory minimum term of imprisonment of not less than 25 years.

On appeal, Medina argues that he was entitled to a departure because the State did not dispute that he had a supportive family or that he did not have a criminal record. But a district court is not obligated to grant a departure sentence simply because mitigating factors exist. See *State v. Jolly*, 301 Kan. 313, 323-24, 342 P.3d 935 (2015). Medina also claims that the court did not follow the proper procedure for considering departure motions as outlined in *State v. McCormick*, 305 Kan. 43, 49-51, 378 P.3d 543 (2016).

In *McCormick*, our Supreme Court made clear that a court should not weigh mitigating factors against any aggravating factors in the case. 305 Kan. at 50-51; see *Jolly*, 301 Kan. at 321-22. Medina claims that the court must have weighed his mitigating factors against aggravating factors because the district court judge stated, "I have to weigh whether or not you have presented substantial and compelling reasons." But there is nothing in the record to suggest that the court determined there were any aggravating

factors in this case or that the court considered them when making its decision. Instead, the record indicates that the district court carefully considered the proposed mitigating factors and found that they did not justify a departure from the statutorily prescribed sentence.

The district court's decision to deny the departure sentence was not based on an error of law or fact, and a reasonable person could agree with the court's conclusion. Thus, the district court did not abuse its discretion in denying Medina's motion for a departure sentence.

Affirmed.